# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

REALTIME ADAPTIVE STREAMING LLC,

        Plaintiff,

    v.

CISCO SYSTEMS, INC.,

        Defendant.

**Case No. 6:17-cv-00591-JRG**

**PLAINTIFF REALTIME ADAPTIVE STREAMING LLC'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (DKT. NO. 39) FIRST AMENDED COMPLAINT**

i

# TABLE OF CONTENTS

Page(s)

I.   INTRODUCTION ............................................................................................ 1

II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................................... 3

    A.   The Fallon Patents Claim Digital Compression Inventions Aimed At Solving
        Problems Unique to Digital Computer Data............................................................. 3

    B.   This Court Has Repeatedly Held That The Subject Matter Of The Asserted Patents Is
        Patent Eligible.............................................................................................. 4

III.  CISCO FAILS TO SHOW THAT ANY OF THE 75 CLAIMS OF THE FOUR FALLON
     PATENTS ARE INVALID UNDER §101. ........................................................ 5

    A.   Cisco Cannot Establish That The Patent Claims Are Directed To An Abstract Idea
        Under *Alice* Step 1. ..................................................................................... 6

        1.   Examining the patents confirms that they claim technological solutions to
            technological problems, not abstract subject matter........................................ 7

        2.   This Court has repeatedly held that the subject matter of the asserted patents is
            patent-eligible despite several prior challenges. ............................................ 11

        3.   Cisco's flawed arguments mischaracterize the law and claims....................... 13

            a.   Cisco mischaracterizes the applicable law. ............................................. 13

            b.   Cisco mischaracterizes the claims. ......................................................... 16

    B.   Cisco Also Cannot Establish That the Claims Are Patent Ineligible Under *Alice* Step
        2. ..................................................................................................... 18

        1.   Under any reasonable characterization, the patented claims include additional
            limitations that are unconventional.................................................................. 18

        2.   Cisco's arguments under step 2 are based on attorney arguments that not only
            rely on a misapplication of controlling law, but are also contradicted by the
            patents themselves. ................................................................................. 20

    C.   Cisco Fails To Analyze Every Single Claim Separately. ........................................... 22

IV.  CISCO'S ARGUMENT REGARDING THE '462 AND '298 PATENTS IS MERITLESS
     23

    A.   Realtime's Allegations Regarding '462 Patent Easily Exceeds the *Twombly* Standard
        for Pleading Infringement.......................................................................... 24

         1.   Realtime's element-by-element factual allegations show far more than the
            required "plausible" infringement. ................................................................. 24

        2.   Cisco's arguments misapply the law and facts. ............................................. 25

B.      Realtime's Allegations Regarding '298 Patent Also Easily Exceeds the *Twombly* Standard for Pleading Infringement............................................................ 28

V.      CISCO'S ARGUMENT REGARDING INDIRECT INFRINGEMENT IS MERITLESS.29

VI.     CONCLUSION.................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 .................................................................................................. 6, 22

*Actus, LLC v. Bank of Am. Corp.*,
    No. CIV.A. 2-09-CV-102-T, 2010 WL 547183 (E.D. Tex. Feb. 10, 2010) ........................... 23

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). ..................................... 5, 7

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.* 841 F.3d 1288, 1293 (Fed. Cir. 2016)................... 5

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ......................................................................... 23

*Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.)*,
    687 F.3d 1266 (Fed. Cir. 2012)............................................................................................ 15

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016).................................................................................... passim

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................................. 22

*Bilski v. Kappos*, 561 U.S. 593, 601 (2010)................................................................................... 5

*buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1354–55 (Fed. Cir. 2014)................................... 15

*Cal. Institute of Tech. v. Hughes Commcn's Inc*.,
    No. 2:13-cv-07245-MRP-JEM, 2014 U.S. Dist. LEXIS 156763 (C.D. Cal Nov. 3 2014)....... 17

*Card Verification Solutions, LLC. v. Citigroup Inc.*,
    No. 13-C-6339, 2014 U.S. Dist. LEXIS 137577 (N.D. Ill. Sept. 29, 2014) .............................. 6

*Cellular Commc'ns Equip. LLC v. HTC Corp.*, No. 6:13-CV-507, 2016 WL 4204136, at *2 (E.D.
    Tex. Aug. 9, 2016). ............................................................................................................... 23

*Certified Measurement, LLC v. CenterPoint Energy Houston Elec. LLC*, No. 2:14-CV-627-RSP,
    2015 WL 1432324, at *2 (E.D. Tex. Mar. 30, 2015)................................................................ 6

*Content Extraction v. Wells Fargo Bank*, 776 F.3d 1343 (Fed. Cir. 2014) ................................. 15

*Core Wireless Licensing v. LG Elecs., Inc.*, --- F.3d ---, 2018 WL 542672, *4 (Fed. Cir. Jan. 25,
    2018) .................................................................................................................................... 13

*CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) ........................... 15

*DDR v. Hotels.com LP*, 773 F.3d 1245, 1257 (Fed. Cir. 2014)................................................... 1, 8

*Diamond v. Chakrabarty*, 447 U.S. 303, 315 (1980)....................................................................... 5

*Electric Power Group, LLC v. Alstom SA*, 830 F.3d 1350 (Fed. Cir. 2016)................................. 15

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016).................................................................................... passim

*Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2016 WL
    1643315, at *3 (E.D. Tex. Apr. 26, 2016) (J. Bryson). ........................................................... 22

*Estee Lauder v. L'Oreal*, 129 F.3d 588, 595 (Fed. Cir. 1997)..................................................... 20

*Finjan, Inc. v. Blue Coat Sys., Inc.*, --- F.3d ---, 2018 WL 341882, at *2 (Fed. Cir. Jan. 10, 2018).
    ...................................................................................................................................... 1, 7, 14

*Fujitsu Ltd. v. Netgear, Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010) ........................................... 26

*Gottschalk v. Benson*, 409 U.S. 63 (1972) (claims directed to mathematical formula)................ 15

*Hart v. Bayer Corp.*, 199 F.3d 239, 248 (5th Cir. 2000) ............................................................ 27

*In re TLI Communications LLC Patent Litigation*,
   823 F.3d 607 (Fed. Cir. 2016) .......................................................................... 15
*InfoGation*, 2017 WL 1135638, at *7 & n.8 ........................................................ 20
*Innovative Automation LLC v. Vudu, Inc.*,
   No. 2:13-CV-1109-JRG, 2014 WL 4090528 (E.D. Tex. Aug. 19, 2014) ............... 23
*Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017) ............. 15
*IOP Techs., Inc. v. Amazon.com, Inc.*, 728 F.3d 1359, 1363 (Fed. Cir. 2015) ............................ 15
*JSDQ Mesh Techs. LLC v. Fluidmesh Networks, LLC*,
   No. 16-CV-212-GMS, 2016 WL 4639140 (D. Del. Sept. 6, 2016) ........................... 6
*Lodsys, LLC v. Brother Int'l Corp.*, No. 2:11-CV-90-JRG, 2012 WL 760729, at *1 (E.D. Tex.
   Mar. 8, 2012) ...................................................................................................... 23
*MAZ Encryption Techs. LLC v. Blackberry Corp.*,
   No. 13-304-LPS, 2016 WL 5661981 (D. Del. Sept. 29, 2016) ................................ 21
*McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1351 (Fed. Cir. 2001) ................................... 18
*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1315 (Fed. Cir. 2016) .......... 2, 13
*McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007). ...................................... 23
*Pers. Audio, LLC v. Google, Inc.*, No. 1:15-CV-350, 2017 WL 4837853, at *4 (E.D. Tex. May
   15, 2017) .............................................................................................................. 24
*Philips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (*en banc*). .................................. 13
*Realtime Data LLC v. Actian Corp. et al.*, Case No. 15-cv-463-RWS-JDL, Dkt. No. 184 (E.D.
   Tex. Nov. 30, 2015) ............................................................................................. 12
*Realtime Data LLC v. Actian Corp.*, 2016 WL 259581 (E.D. Tex. Jan. 21, 2016) ................. 4, 12
*Realtime Data LLC v. Carbonite*, 2017 WL 4693969 (E.D. Tex. Sept. 20, 2017) ................... 4, 11
*Realtime Data LLC v. Rackspace US, Inc.*, 2017 WL 2590195, *8 (E.D. Tex. June 14, 2017)... 10
*RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1328 (Fed. Cir. 2017) ........................... 1, 14
*Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 290 (5th Cir. 2016). .......................................... 23
*Smartgene, Inc. v. Advanced Biological Labs., SA*, 555 Fed. Appx. 950 (Fed. Cir. 2014) .......... 15
*Stragent, LLC v. BMW of N. Am., LLC*, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017)................ 26
*Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1147 (Fed. Cir. 2016) ...................... 15
*Thales Visionix Inc. v. U.S.*, 850 F.3d 1343, 1348-49 (Fed. Cir. 2017). ........................................ 9
*Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1366 (Fed. Cir. 2012) ...................................... 26
*TQP Dev., LLC v. Intuit Inc.*, 2014 WL 651935, *4 (E.D. Tex. Feb. 19, 2014). ......................... 17
*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017)15
*Verint Sys. Inc. v. Red Box Recorders Ltd.*, 226 F. Supp. 3d 190, 192 (S.D.N.Y. 2016)............. 16
*Verint Sys. Inc. v. Red Box Recorders Ltd.*, No. 14-CV-5403 (KBF), 2016 WL 7156768, at *1
   (S.D.N.Y. Dec. 7, 2016)........................................................................................... 6
*Visual Memory LLC v. Nvidia Corp.*, 867 F.3d 1253, 1257 (Fed. Cir. 2017). ........................ 9, 13
*WiAV Networks, LLC v. 3com Corp.*,
   No. CIV.A. 5:09-CV-101DF, 2009 WL 6048922 (E.D. Tex. Dec. 15, 2009)................... 23, 29

## I.     INTRODUCTION

Under *Alice* step 1, the Fallon patent claims at issue here are not abstract, but rather are limited to a particularized subset of the non-abstract realm of digital-data compression. Cisco's arguments rely on mischaracterization of the patented inventions and overstatements regarding the §101 legal standards. The patented claims are patent eligible because they provide specific technological solutions that improve computer capabilities—e.g., improving the ability to more effectively compress digital data so as to increase the capacity of a computer system to store more data or to transfer data more efficiently across computer systems. The claims describe specific ways (using multiple compressors, asymmetric compressors, determining parameter of data block and/or throughput of a communication channel) to improve the effectiveness of reducing the amount of digital data to be stored or transmitted.

Cisco's arguments rely on stripped down summary of the claimed inventions and inapposite cases, such as *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322 (Fed. Cir. 2017), which was about "creating [an] image" by using a mathematical formula ("one multiplication operation"). Unlike the asserted Fallon patents here, *RecogniCorp* involved a claim that "does not even require a computer; the invention can be practiced verbally." 855 F.3d at 1328. Cisco's argument is based on a distortion of the controlling law, which draws a clear line between patent claims in which "computers are invoked merely as a tool" for executing abstract idea, on the one hand, and those that provide technological solutions to technological problems ("improvement in computer capabilities"), on the other hand, which are patent eligible. Applying that controlling law to Realtime's patented inventions requires rejection of Cisco's arguments. Indeed, the claims at issue here are even more clearly patent eligible than those found by the Federal Circuit to be eligible. *See, e.g., Finjan, Inc. v. Blue Coat Sys., Inc.*, --- F.3d ---, 2018 WL 341882, at *2 (Fed. Cir. Jan. 10, 2018).[1]

---

[1] *See also, e.g., DDR v. Hotels.com LP*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) (patent regarding "retaining website visitors" held eligible); *Visual Memory LLC v. NVidia*, 867 F.3d 1253, 1257 (Fed. Cir. 2017) (patent claiming a system with "operational characteristics" which "determines a type of data" held eligible).

Even if it could satisfy step 1, Cisco also cannot satisfy its burden under *Alice* step 2. When properly examined as an ordered combination, the claim elements require much more than well-understood, routine, conventional activities for solving the then-existing problems in the field of digital data compression. Cisco's contrary arguments, focusing merely on individual elements separately, are factually and legally incorrect. Indeed, "a court must look to the claims as an ordered combination."[2]

The arguments similar to those advanced by Cisco have been rejected by this Court involving other Realtime patents that are incorporated by reference into the Fallon patents asserted in this case. Judge Schroeder and Judge Love have repeatedly found patents of the same inventor (James Fallon) involving the same field (compression) (and incorporated by reference into the Fallon patents asserted in this case) to be patent eligible under §101. *See* Ex. 1-3.

Regarding two other asserted patents, the '462 and '298 patents, Cisco does not contend that they are ineligible under §101, but argues that the claims regarding them should be dismissed because Realtime's allegations purportedly do not meet and pleading standards under *Twombly*. But one glance at the First Amended Complaint (FAC) shows that Cisco's arguments lack any merit. The FAC provides ample allegations regarding Cisco's infringement, including the fact that specific Cisco products comply with the HEVC Standard, and **element-by-element** infringement analyses specifically comparing each limitations of exemplary patent claims to Cisco's products and the HEVC Standard. Cisco's argument demanding Realtime to "prove" infringement and to prove that Cisco "necessarily infringes" contravenes the legal standard on a Rule 12(b)(6) motion, e.g., that well pleaded facts are taken as true and viewed in light most favorable to Realtime.

Finally, Cisco's argument that "pre-suit induced and contributory infringement" should be dismissed (Mot. at 2) is an attempt to prematurely limit damages window at the pleading

---

[2] *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016); *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016) ("an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.").

stage. Cisco's arguments should be rejected.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Fallon Patents Claim Digital Compression Inventions Aimed At Solving Problems Unique to Digital Computer Data

The asserted Fallon patents[3] teach improved, particularized digital data compression systems and methods to address problems specific to digital data. Indeed, the patents themselves state that they deal with limitations and problems arising in the realm of compressing "**[d]iffuse digital data**" which is "**a representation of data that … is typically not easily recognizable to humans in its native form**." *E.g.,* '535 patent at 2:28-30.[4]

The Fallon patents are directed to systems and methods of digital data compression utilizing multiple compressors (e.g., asymmetric compressors) to compress data based on a parameter relating to, e.g., the data blocks and/or throughput (bandwidth) of a communication channel. *E.g.,* '535 patent at Abstract, 1:21-29. The Fallon patents address specific problems in the field of compressing, storing, and/or transmitting digital data, including: "compromise between efficient data storage, access speed, and addressable data space"; "limitations in the size of the data required to both represent and process an individual data block address, along with the size of individual data blocks"; "file systems [that] are not able to randomly access compressed data in an efficient manner"; "substantial disk fragmentation and slower access times." *See* '535 patent at 6:31-7:46.

The Fallon patents solved these technological problems and others with a novel technological solution in digital data compression utilizing two or more compressors (including, e.g., "asymmetric" compressor[5]), and the system configured to select a compressor based on a

---

[3] The '535, '477, '907, and '442 patents asserted in this case (the asserted "Fallon patents") are related to each other and share substantially the same specification. Two additional Realtime patents are also asserted in this case: U.S. Pat. Nos. 8,634,462 and 9,578,298. Cisco has not argued that the '462 or the '298 patents are patent ineligible under §101.

[4] All emphasis in quotes are added, unless otherwise stated.

[5] "In "[a]n asymmetrical data compression algorithm[,] … the execution time for the compression and decompression routines differ significantly." '535 patent at 9:63-66.

parameter relating to, e.g., the data blocks and/or throughput (bandwidth) of a communication channel. *See, e.g.,* '535 patent at Abstract, 1:21-29; 7:51-8:54. The patents describe that "the overall throughput (bandwidth) … is one factor considered by the controller 11 in deciding whether to use an asymmetrical or symmetrical compression" (*id.* at 11:25-29), and recognized that "utiliz[ing] an asymmetrical algorithm … [may] provide an increase in the overall system performance as compared the performance that would be obtained using a symmetrical algorithm" (*id.* at 12:14-20). There are 75 asserted claims across the four asserted Fallon patents.[6]

### B.     This Court Has Repeatedly Held That The Subject Matter Of The Asserted Patents Is Patent Eligible.

The asserted Fallon patents incorporate other patents of related Realtime entity, all invented by the same inventor (James Fallon) and covering the same field (compression), including U.S. Pat. Nos. 6,195,024 and 6,309,424 (*see* '535 patent at 5:33-38); and 6,601,104 ('535 patent at 9:19-28). These Realtime patents incorporated by reference in the asserted Fallon patents are in the same patent family as other Realtime compression patents that this Court has repeatedly held to be patent eligible.

For example, in *Realtime Data LLC v. Carbonite Inc.*, this Court found U.S. Pat. Nos. 9,054,728, 8,717,204, 7,415,530; and 9,116,908 to be patent eligible.[7] *Realtime Data LLC v. Carbonite,* 2017 WL 4693969 (E.D. Tex. Sept. 20, 2017) (Ex. 1). In addition, Judge Schroeder and Judge Love also denied two other §101 motions in *Realtime Data LLC v. Actian Corp.* involving U.S. Pat. Nos. 7,378,992; 8,643,513; 6,597,812; 7,415,530; and 9,116,908.[8] *Realtime Data LLC v. Actian Corp.*, 2016 WL 259581 (E.D. Tex. Jan. 21, 2016) (Ex. 2); *Realtime Data*

---

[6] There are 19 asserted claims in the '535 patent, 29 asserted claims in the '477 patent, 14 asserted claims in the '907 patent, and 13 asserted claims in the '442 patent.

[7] The '728 patent is related to the '024 and '424 patents incorporated by reference in the asserted Fallon patents ('535 patent at 5:33-38); and the '530 and '908 patents are related to the '104 patent incorporated by reference in the asserted Fallon patents (*id.* at 9:19-28).

[8] The '513 and '992 patents are related to the '024 and '424 patents incorporated by reference in the asserted Fallon patents ('535 patent at 5:33-38); and the '530 and '908 patents are related to the '104 patent incorporated by reference in the asserted Fallon patents (*id.* at 9:19-28).

*LLC v. Actian Corp.*, Case No. 15-cv-463-RWS-JDL, Dkt. No. 184 (E.D. Tex. Nov. 30, 2015)
(Ex. 3).

## III.    CISCO FAILS TO SHOW THAT ANY OF THE 75 CLAIMS OF THE FOUR FALLON PATENTS ARE INVALID UNDER §101.

Eligible "subject matter described in §101 is expansive" and "cast in broad terms."

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.* 841 F.3d 1288, 1293 (Fed. Cir. 2016) (quoting

*Diamond v. Chakrabarty*, 447 U.S. 303, 315 (1980)). "Congress took this permissive approach to

patent eligibility to ensure that 'ingenuity should receive liberal encouragement.'" *Bilski v.*

*Kappos*, 561 U.S. 593, 601 (2010). However, there are three exceptions to § 101's broad patent-

eligibility principles: laws of nature, physical phenomena, and abstract ideas. *Id.* at 594. The

Supreme Court has warned, however, that interpreting these exceptions too broadly could

"swallow all of patent law" because "[a]t some level, 'all inventions . . . embody, use, reflect,

rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice Corp. v. CLS*

*Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).

In *Alice*, the Supreme Court articulated a two-step analysis for determining patent

eligibility under §101. First, the court must determine "whether the claims at issue are directed to

[a] patent-ineligible concept," such as an abstract idea. *Alice*, 134 S. Ct. at 2355. The Federal

Circuit recently emphasized the importance of this step of the analysis, explaining that the first

*Alice* step "plainly contemplates that the first step of the inquiry is a meaningful one, i.e., that a

substantial class of claims are *not* directed to a patent-ineligible concept." *Enfish, LLC v.*

*Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016).

If the claims are not directed to an abstract idea, then they are deemed patent-eligible and

the inquiry ends. If, on the other hand, the claims are directed to an abstract idea, the second step

of the *Alice* analysis calls for the court to "consider the elements of each claim both individually

and 'as an ordered combination' to determine whether [the claims contain] an element or

combination of elements that is 'sufficient to ensure that the patent in practice amounts to

significantly more than a patent upon the [abstract idea] itself.'" *Alice*, 134 S. Ct. at 2355.

Furthermore, Defendant *cannot* prevail on this step simply by showing that each individual claim element was "known in the art" or conventional. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016). Even where individual elements are conventional technologies, the specific arrangement of conventional technologies can also form the inventive concept. *Id.* at 1350.

"Patent eligibility under §101 presents an issue of law . . . contain[ing] underlying factual issues." *Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340–41 (Fed. Cir. 2013). "While the claim language of some patents may be so clear that the court need only undertake a facial analysis to render it invalid at the pleading stage, that will not be the norm." *Certified Measurement, LLC v. CenterPoint Energy Houston Elec. LLC*, 2015 WL 1432324, *2 (E.D. Tex. Mar. 30, 2015). "The difficulty of making a substantive ruling on the validity of an issued patent in what is—in essence—a complete vacuum cannot be understated." *Id.* As another Court has noted, "[i]t has also become increasingly common for litigants to pursue such judicial rulings, which can be as complex as *Markman* rulings but without a similar record. Courts must therefore be alert to motions seeking factual determinations of what a claimed invention 'is' when unaccompanied by the necessary submissions from those skilled in the art." *Verint Sys. Inc. v. Red Box Recorders Ltd.*, 2016 WL 7156768, at *1 (S.D.N.Y. Dec. 7, 2016).

"At the motion to dismiss stage a patent claim can be found directed towards patent-ineligible subject matter if the only plausible reading of the patent must be that there is clear and convincing evidence of ineligibility." *JSDQ Mesh Techs. LLC v. Fluidmesh Networks, LLC*, 2016 WL 4639140, at *1 (D. Del. Sept. 6, 2016); *see also Card Verification Solutions, LLC. v. Citigroup Inc.*, 2014 U.S. Dist. LEXIS 137577, *6 (N.D. Ill. Sept. 29, 2014).

Cisco has not met—and cannot meet—its burden of proving the claims are ineligible under § 101, at this early stage, or any later stage, for that matter.

### A.    Cisco Cannot Establish That The Patent Claims Are Directed To An Abstract Idea Under *Alice* Step 1.

The threshold inquiry of the §101 analysis requires Cisco to demonstrate that the patent

claims are directed to an "abstract idea," *i.e.*, an "idea of itself" or "fundamental truths or fundamental principles the patenting of which would pre-empt the use of basic tools of scientific and technological work." *Alice*, 134 S. Ct. at 2355. Cisco fails to do so here. Instead, Cisco applies a sweeping, incorrect reading of the §101 caselaw to an oversimplified mischaracterization of the patented inventions. Under any fair characterization, the claims here are patent-eligible under controlling law because they provide particular, technical solutions to technical problems specific to compression of digital computer data.

> **1.      Examining the patents confirms that they claim technological solutions to technological problems, not abstract subject matter.**

Under the Supreme Court's *Alice* framework, claims that "improve[] an existing technological process" or "solve a technological problem in 'conventional industry practice'" are patent eligible. *Alice*, 134 S. Ct. at 2358. The Federal Circuit has applied these standards in several controlling cases to uphold the patentability of claims challenged as abstract.

In *Finjan*, the Federal Circuit held eligible a patent for identifying suspicious computer virus. *Finjan, Inc. v. Blue Coat Sys., Inc.*, --- F.3d ---, 2018 WL 341882, at *2-4 (Fed. Cir. Jan. 10, 2018). Finjan's claim recited only three steps: (a) "receiving … a Downloadable" computer program; (2) "generating … security profile that identifies suspicious code;" and (3) "linking" the security profile to the computer program. *Id.* The claim did not specify *how* to "identif[y] suspicious code." *Id.* at *2. While acknowledging that prior Federal Circuit precedent has held that "virus screening," by itself, is an abstract idea, the court nevertheless held that Finjan's patent claim was not abstract because it was not directed to just any "virus screening," but instead limited to a particular type of virus screening, which constituted improvement in computer functionality. In so holding, the court rejected the same argument advanced by Cisco here, namely, that the claims "do not sufficiently describe how to implement" any idea. *Id.* at *3-4. On this point, the court held that the three recited claimed steps were all that was needed to render the claim patent-eligible. *Id.*

The Realtime claims here present an even clearer case for patent-eligibility than those at

issue in *Finjan*. In contrast to the patent in *Finjan*, which was in the field of "virus screening" that previously was held to be abstract, Realtime's claims are directed to particularized digital data compression methods and systems, which plainly is not abstract. *See DDR*, 733 F.3d at 1259. And the asserted claims are not just directed to digital data compression in general, but a *particularized* subset of novel digital data compression, which is directed to improving the capacity of a computer system to store more data or to transfer data more efficiently across computer systems. Moreover, the asserted claims require even more specific steps and components than those held eligible in *Finjan*. These include: (i) the use of "a **plurality** of **different**" compression algorithms or techniques; (ii) determining "data parameters" or "attributes" of a digital data block; (iii) "select[ing]" specific techniques based upon that determination relating to "a throughput of a communication channel," or a digital data "access profile," (iv) requiring the selected techniques to be "asymmetric," and other novel elements. *E.g.,* '535 patent claims 1 & 15; '477 claim 1; '442 claim 8; '907 claim 1.

In *Enfish*, the Federal Circuit reversed a patent-ineligibility ruling on a database patent, which the district court described as being directed to the abstract idea of "storing, organizing, and retrieving memory in a logical table." *Enfish, LLC v. Microsoft Corp*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). The court held that "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule." *Id.* The Federal Circuit further criticized the district court's analysis because it "downplayed the invention's benefits" disclosed in the specification. *Id.* at 1337–38. Because the claims were "**designed to improve the way a computer stores and retrieves data in memory**," they were "directed to a specific implementation of a solution to a problem in the software arts" and, thus, "not directed to an abstract idea." *Id.* at 1339.[9]

---

[9] Similarly, in *DDR*, the claims addressed "the problem of retaining website visitors." *DDR v. Hotels.com LP*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Despite being directed to e-commerce, the court held that these claims "stand apart" from abstract claims "because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." *Id.* Instead, "the claims recite[d] an invention that is not merely the routine or conventional use of the Internet." *Id.* at 1259. Thus, they were eligible

In *Visual Memory*, the claims recited a system with "operational characteristics" which "determines a type of data." *Visual Memory LLC v. NVidia*, 867 F.3d 1253, 1257 (Fed. Cir. 2017). The court rejected defendant's argument that the claims "are directed to no more than a desired result" or that the patent claim "nothing more than a black box." *Id.* at 1260-61. The court cautioned against over-simplifying the claims, and held that they were directed to "improvements to computer functionality" as opposed to "economic or other tasks for which a computer is used in its ordinary capacity." *Id.* at 1258-1261.

In *Core Wireless*, the Federal Circuit affirmed eligibility of a patent in the field of summarizing and presenting information in electronic devices. *Core Wireless Licensing v. LG Elecs., Inc.*, --- F.3d ---, 2018 WL 542672, *4 (Fed. Cir. Jan. 25, 2018). In so doing, the court rejected defendants' failure to acknowledge key claim elements and cautioned that courts "must be mindful that all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* at *3. After applying the court's precedents, it held that the patent claimed "an improvement in the functioning of computers" (*id.* at *3-4) because it was limited "to a ***particular*** manner of summarizing and presenting information in electronic devices." *Id.* at *4. As in *Core Wireless*, the patents at issue here claim specific and particular manners of selecting and compressing digital data to improve the capacity of a computer system to store more data or to transfer data more efficiently across computer systems. As the Federal Circuit did in *Core Wireless*, the Court should reject Cisco's attempt to ignore key claim elements, which Cisco does to construct their flawed argument that "human can" perform the claims. Mot. at 17. Like in *Core Wireless,* the claims here are patent-eligible.[10]

As in *Finjan, Enfish, DDR*, *Core Wireless,* and *Visual Memory*, the claimed inventions

---

because the patented claims were "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.*

[10] Moreover, in *Thales*, the Federal Circuit held a patent to be eligible under §101 even though the claims recited conventional components (e.g., conventional sensors) and mathematical equations because the claims specified a particular configuration of the sensors. *Thales Visionix Inc. v. U.S.*, 850 F.3d 1343, 1348-49 (Fed. Cir. 2017). The court relied on the patent specification in its ruling. *Id.*

here provide particular technological solutions to overcome technological problems, i.e., those specific to the field of digital-data compression. The patents themselves state they are directed to problems unique to the realm of digital data, a form of computer data "**not easily recognizable to humans in native form**." *E.g.,* '535 patent at 2:28-30.[11] In this realm, the patents describe using a combination of particular steps or structural computer components to help improve detection and exploitation of redundancies, for example, in the incoming strings of computer "1s" and "0s."

Like the inventions in *Finjan, DDR*, *Enfish, Core Wireless,* and *Visual Memory*, the patents teach specific improvements to the function of the computer parts themselves, such as computer memory and computer-data storage and retrieval mechanisms. For example, the patents describe various problems in the conventional arts, including "limitations in the size of the data required to both represent and process an individual data block address, along with the size of individual data blocks," and issues relating to "a compromise between efficient data storage, access speed, and addressable data space." '535 patent at 6:31-53. These are technological problems, as opposed to human problems. The Fallon patents solved the problems in the conventional digital data compression arts by providing digital systems utilizing two or more compressors (e.g., "asymmetric" compressor[12]), and the systems configured to select a compressor based on a parameter of a data block and/or throughput of a communication channel. *See, e.g., id.* at 7:51-8:54.[13] These claimed solutions are not abstract. They are necessarily rooted in computer technology and aimed at solving limitations in then-existing digital-data

---

[11] The Federal Circuit's analysis regarding §101 often involves analysis and reliance on the specification. *See, e.g., Core Wireless Licensing v. LG Elecs., Inc.*, --- F.3d ---, 2018 WL 542672, *4 (Fed. Cir. Jan. 25, 2018) ("The specification confirms that these claims" are patent eligible); *Philips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("[C]laims must be read in view of the specification.")

[12] "In "[a]n asymmetrical data compression algorithm[,] … the execution time for the compression and decompression routines differ significantly." '535 patent at 9:63-66.

[13] *See also, e.g.,* '535 patent claims 1 & 15; '477 claim 1; '442 claim 8; '907 claim 1.

compression systems.[14]

Realtime's claims present a clearer case of subject-matter eligibility than those already held eligible in Federal Circuit cases, like *DDR*, *Finjan*, and others. For instance, in *DDR*, after analyzing the claimed inventions, which were directed to the "look and feel" of websites, the court held that, although "the [asserted] claims do not recite an invention as technologically complex as an improved, particularized method of '**digital-data compression**,'" they were nonetheless patent eligible. *DDR,* 773 F.3d at 1259. The claims here thus present precisely the type of invention the Federal Circuit recognized as unquestionably patent eligible— particularized systems and methods of digital-data compression. Indeed, the claimed inventions in this case are not just merely directed to digital-data compression, but a very narrow species of digital-data compression.

### 2.     This Court has repeatedly held that the subject matter of the asserted patents is patent-eligible despite several prior challenges.

Other compression patents of related Realtime entity, all invented by the same inventor (James Fallon), are incorporated into the asserted Fallon patents by reference, including U.S. Pat. Nos. 6,195,024 and 6,309,424 (*see* asserted '535 patent at 5:33-38); and 6,601,104 (*see* '535 patent at 9:19-28). These other Realtime compression patents incorporated into the asserted Fallon patents' specifications are in the same patent family as other Realtime patents that this Court has repeatedly held to be patent eligible.

For example, in a detailed opinion issued on September 20, 2017 in *Realtime Data LLC v. Carbonite Inc.*, this Court found U.S. Pat. Nos. 9,054,728, 8,717,204, 7,415,530; and

---

[14] The patents, properly interpreted, are limited to compression of digital data. For example, the defendants in *Realtime Data LLC v. Actian Corp. et al.* agreed that "compress"—a term present in all claims of the asserted Fallon patents—means "represent data with fewer ***bits***," indicating digital data compression (a "bit" is a unit of digital data). 2016 WL 4054914, at *18 (E.D. Tex. July 28, 2016); *see also Realtime Data LLC v. Rackspace US, Inc.*, 2017 WL 2590195, *8 (E.D. Tex. June 14, 2017) (construing "compress" as "represent data with fewer ***bits***"). As another example, "data block" was construed for other Realtime patents to mean "a single unit of data, which may range in size from individual ***bits*** through complete files or collection of multiple files." *Id.* at *18.  Indeed, any construction of the term that does not limit the term to digital data would be contrary to the plain and ordinary meaning. *See also* Dkt. No. 40.

9,116,908 to be patent eligible.[15] *Realtime Data LLC v. Carbonite,* 2017 WL 4693969 (E.D. Tex. Sept. 20, 2017) (Ex. 1). In so holding, the Court rejected some of the same arguments advanced by Cisco here. For instance, the '728 patent related to "analyz[ing] data … to identify one or more parameters or attributes" in performing compression, among other things. *Id.* at *1. The Court held that the patents are "directed to non-abstract improvements to computerized data compression techniques" and "is a solution to a computing problem." *Id.* at *5 ("Although words within a claim may disclose generic, conventional computing elements, a claimed system as a whole may present a non-abstract idea."). The Court rejected defendant's argument that the patents are purportedly about "generic components" (*e.g.,* Ex. 1 at *5, 7-9) or that they merely "describe function or outcome without any specificity" (*e.g., id.* at *6, 10).

In addition to that ruling, Judge Schroeder and Judge Love also denied two other §101 motions in *Realtime Data LLC v. Actian Corp.* involving U.S. Pat. Nos. 7,378,992; 8,643,513; 6,597,812; 7,415,530; and 9,116,908.[16] *Realtime Data LLC v. Actian Corp.*, 2016 WL 259581 (E.D. Tex. Jan. 21, 2016) (Ex. 2). In November 2015, Judge Love held that "an assessment of the claims at issues—by a careful reading of the claims themselves—does not clearly reveal that the patents are abstract." Ex. 3. In January 2016, Judge Schroeder adopted this ruling and further held that under Realtime's view, namely, that the claims are directed to the compression of digital data, the argument that the patents are directed to an abstract idea "would fail" because the patents "provide technological solutions to problems arising specifically in the realm of computer technology." Ex. 2.

Cisco's criticisms regarding this Court's decisions (Mot. at 12, fn.4) should be rejected. Cisco argues that two of the three decisions were before the *RecogniCorp* case, but the *RecogniCorp* case involved a patent on "creating [an] image" using mathematical formula, and

---

[15] The '728 patent is related to the '024 and '424 patents incorporated by reference in the asserted Fallon patents ('535 patent at 5:33-38); and the '530 and '908 patents are related to the '104 patent incorporated by reference in the asserted Fallon patents (*id.* at 9:19-28).

[16] The '513 and '992 patents are related to the '024 and '424 patents incorporated by reference in the asserted Fallon patents. *See* '535 patent at 5:33-38.

was not about digital data compression. *See infra* at III.A.3.a. And in any event, *RecogniCorp* did not change the §101 case law—e.g., technological solutions to technological problems are patent eligible before and after *RecogniCorp*. *See Alice*, 134 S. Ct. at 2358 (patent eligible if it "improved an existing technological process"). Moreover, the *Realtime v. Carbonite* case expressly considered and rejected defendant Carbonite's citation and arguments about *RecogniCorp*. Ex. 1 at *5.

Cisco's argument that this Court's analyses relied on the specifications (Mot. at 12, fn.4) is also legally and factually incorrect. The Court relied on the claims of the Realtime patents. *E.g.* Ex. 1 at *4 ("claim 1 discloses …"); *id.* at *7, *9. Moreover, there is nothing improper about relying on the specification. Indeed, the patent specification informs the nature of the inventions and should be considered in a §101 analysis, as the Federal Circuit does. *See, e.g., Core Wireless Licensing v. LG Elecs., Inc.*, --- F.3d ---, 2018 WL 542672, *4 (Fed. Cir. Jan. 25, 2018) ("The specification confirms that these claims" are patent eligible); *see also Philips*, 415 F.3d at 1315 ("claims 'must be read in view of the specification.'").[17]

### 3. Cisco's flawed arguments mischaracterize the law and claims.

### a. Cisco mischaracterizes the applicable law.

As the Federal Circuit in *Finjan*, *Enfish, Core Wireless,* and *Visual Memory* explained, the law draws a line of distinction between patent claims in which "computers are invoked merely as a tool" (which may be patent ineligible) and patent claims that provide technological solutions to technological problems (e.g., "improvement in computer capabilities," which are patent eligible). *Enfish*, 822 F.3d at 1335-36; *Visual Memory*, 867 F.3d at 1258-59.[18]

---

[17] Cisco cites to *Two-Way Media Ltd. v. Comcast Cable Comm, LLC*, 874 F.3d 1329 (Fed. Cir. 2017) (Mot. at 12, fn.4), but that case does not support Cisco's assertion that specification cannot be considered. In *Two-Way Media*, the court merely stated that what was described in the specification was not linked to the claims, "even taking into account [plaintiff's] proposed constructions." *Id.* at 1338.

[18] *See also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1315 (Fed. Cir. 2016) (rejecting argument that inventions "simply use a computer as a tool" and holding patents eligible because claims "focused on a specific asserted improvement in computer animation, *i.e.*, the automatic use of rules of a particular type."); *DDR*, 773 F.3d at 1257 (holding that patent is eligible because it "is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks."); *Alice*, 134 S. Ct. at 2358 (patent

Applying that law here requires rejection of Cisco's argument. Although Cisco seeks to blur and dramatically expand the boundaries of what is "abstract," here, it is not the mere fact that the asserted patents are in the digital domain that is relevant; rather, it is the fact that the problems that gave rise to Realtime's inventions are rooted in digital computer technologies, and also that the solutions provided in Realtime's inventions are improvements on the computer capabilities—e.g., increasing the capacity of a computer system to store more data or to transfer data more efficiently across computer systems. Indeed, the claims at issue here are more clearly about technological solutions to technological problems than the claims held patent-eligible in *Finjan*, which involved a software patent that claimed "receiving" a computer program, "generating" a "security profile that identifies suspicious code," and "linking" the security profile to the computer program. *Finjan*, --- F.3d ---, 2018 WL 341882, at \*2.

Cisco relies on inapplicable cases involving patents that are not about digital data compression at all, much less the narrow subset of digital data compression systems and methods claimed here. A close analysis of these cases reveals that they provide no support for Cisco's motion.

For example, the patent at issue in *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1328 (Fed. Cir. 2017), relied on by Cisco, was about "creating [an] image" by using a mathematical formula ("one multiplication operation"). 855 F.3d at 1324. Cisco mischaracterizes *RecogniCorp* in arguing that it was about compression of digital data (*e.g.,* Mot. at 11, fn.3). The Federal Circuit expressly found otherwise, holding that the invention in *RecogniCorp* "**does not even require a computer; the invention can be practiced verbally**." 855 F.3d at 1328. In contrast, the claims at issue here require a computer and cannot be "practiced verbally," nor do they claim a mathematical formula. Indeed, the patent specifically discusses digital computer data "not easily recognizable to humans in its native form." '535 patent at 2:28-30. Moreover,

---

eligible if it "improved an existing technological process").

unlike an invention about creating an image,[19] the Fallon patents are directed to technological improvements (e.g., specific systems and methods of reducing the amount of bits) that solve technological problems (e.g., increasing the capacity of a computer system to store more data or to transfer data more efficiently across computer systems).

Cisco's reliance on other cases, involving entirely different subject matter, is similarly misplaced. For instance, *Smartgene, Inc. v. Advanced Biological Labs., SA*, 555 Fed. Appx. 950 (Fed. Cir. 2014) cited by Cisco (Mot. at 15) involved a patent claiming mental steps that medical "doctors do routinely." 555 Fed. Appx. at 955.[20] Claims at issue here are nothing like the claims

---

[19] Cisco's argument that *RecogniCorp*'s "'image' data … is an example of the 'digital' data" (Mot. at 17, fn.6) is false. An image does not need to be digital, as explained in the Fallon patents. *See* '535 patent at 2:21-23 ("images … frequently exists in the natural world as *analog* information"). The Federal Circuit in *RecogniCorp* also contradicts Cisco's assertion, as it expressly ruled that the *RecogniCorp* patent "does not even require a computer; the invention can be practice verbally." 855 F.3d at 1328.

[20] Other cases cited by Cisco are similarly inapposite. *E.g., Alice*, 134 S. Ct. 2347 (patent about "exchanging financial obligations"); *Content Extraction v. Wells Fargo Bank*, 776 F.3d 1343 (Fed. Cir. 2014) (claims directed to processing "hard copy documents"); *In re TLI*, 823 F.3d 607 (Fed. Cir. 2016) (claims directed to the idea of classifying and storing images in an organized manner, which is merely a method of "organizing human activity"); *Electric Power Group, LLC v. Alstom SA*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (patent about collecting and displaying electric power grid information, which was a "mental process."); *Gottschalk v. Benson*, 409 U.S. 63 (1972) (claims directed to mathematical formula); *Intellectual Ventures I LLC v. Erie Indem. Co.,* 850 F.3d 1315, 1327 (Fed. Cir. 2017) (patent merely about "organizing and accessing records"); *Two-Way Media Ltd. v. Comcast Cable Comm., LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (claims directed to "sending," "directing," and "monitoring" information); *Versata Dev. Grp., Inc. v. SAP Am., Inc.,* 793 F.3d 1306, 1334 (Fed. Cir. 2015) (covered business method patent that was directed to "abstract idea of determining a price using organization and product group hierarchies"); *Intellectual Ventures I LLC v. Capital One Bank*, 792 F.3d 1363 (Fed. Cir. 2015) (patent on "tracking financial transactions" and "budgeting"); *Synopsys, Inc. v. Mentor Graphics Corp*., 839 F.3d 1138, 1147 (Fed. Cir. 2016) (patent claiming "abstract mental process" relating to "changing one description … into another description"); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) (claim directed to verifying a credit card transaction that "can be performed in the human mind"); *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1008 (Fed. Cir. 2014) (patent on "managing a game of bingo"); *Ultramercial v. Cisco*, 772 F.3d 709 (Fed. Cir. 2014) (patent directed to distributing copyrighted media at no cost in exchange for viewing advertisement); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (claims at issue directed to "fundamental economic concept of offer-based price optimization"); *Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278-81 (Fed. Cir. 2012) (claims reciting implementation of "the mathematical concept of managing a stable value life insurance policy" on a computer); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1354–55 (Fed. Cir. 2014) (claims adding generic computer functionality to the formation of guaranteed contractual relationships).

at issue in the cases cited by Cisco (*see, e.g.,* Mot. at 7-11, 15-18)—e.g., the asserted patents do not claim steps that doctors perform, "pricing products," financial budgeting tools, laws of nature, mathematical formula, credit card transactions, mental process, contractual relationships, or any other abstract idea.

**b.    Cisco mischaracterizes the claims.**

Cisco oversimplifies the claims in arguing that the asserted Fallon patents are directed to "encoding data based on a parameter" (*e.g.,* Mot. at 14, 18, 20-21, 22) which it purports "a human can" perform (Mot. at 17). As the Federal Circuit has repeatedly cautioned, "describing the claims at [] a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule." *Enfish*, 822 F.3d at 1337. Cisco pursues the very reductionism that courts caution against. *Id.*[21] Cisco's mis-framing of the patented inventions is contradicted by the patent specifications and the claims, which make clear the claims are directed to particular digital-data compression systems. Indeed, even the key, summary-form aspects of the inventions are directed to technological solutions: systems and methods of digital data compression utilizing multiple compressors (e.g., asymmetric compressors) and selecting among the multiple compressors to compress data blocks based on a parameter relating to, e.g., the data blocks and/or throughput (bandwidth) of a communication channel. *See, e.g.,* '535 patent claims 1 & 15; '477 claim 1; '442 claim 8; '907 claim 1.

Moreover, in making its "human can" perform argument (Mot. at 17), Cisco also ignores other key aspects of the claims, including, e.g., (1) "plurality of compressors," (2) "one or more asymmetric compressors," (3) utilization of "one or more central processing units (CPU)," (4) "storage medium," (5) "descriptor of the at least the portion of the data block," (6) "access profile," (7) "slow compress encoder," (8) "fast decompress decoder," (9) "common host system," among other combination of elements. *E.g.,* '535 patent at 20:29-23:30; *see also, e.g.,*

---

[21] *Verint Sys. Inc. v. Red Box Recorders Ltd.,* 226 F. Supp. 3d 190, 192 (S.D.N.Y. 2016) ("Many recent motions seeking determinations of patent ineligibility suffer from such reductionist simplicity—from characterizing as simply a mousetrap that which is in fact a better mousetrap. Courts faced with such motions must scrutinize reductive descriptions with great care.").

claims of '477, '907, and '442 patents. Cisco's assertions notwithstanding, no lawyer calls the Bluebook a book of compression. *See* Mot. at 4. Using abbreviations and "emojis" is not the same as "compression," much less the same as the particularized form of digital data compression taught in the asserted patents.

Moreover, courts have held Cisco's "human mind" arguments inapplicable and unhelpful. For example, the Federal Circuit Judge Bryson, sitting by designation, held patent claim to be eligible where the claims "involve[d] a several-step manipulation of data that, except perhaps in its most simplistic form, could not conceivably be performed in the human mind or with pencil and paper." *TQP Dev., LLC v. Intuit Inc.,* 2014 WL 651935, *4 (E.D. Tex. Feb. 19, 2014). Similarly, the claimed digital data compression techniques "could not conceivably be performed in the human mind or with pencil and paper." *Id.* An ordinary system or method of digital data compression, let alone the particular patented inventions here, would be impossible to perform in the human mind. This is why other courts have held that the "human mind" argument is "unhelpful for computer inventions" and "mislead[s] courts into ignoring a key fact: although a computer performs the same math as a human, a human cannot always achieve the same results as a computer." *Cal. Institute of Tech. v. Hughes Commc'n's Inc*., 59 F. Supp. 3d 974, 994-995 (C.D. Cal. Nov. 3 2014). In short, Cisco's analogies are misplaced. Indeed, the patents themselves refute Cisco's flawed analogies: "**digital data** is … **not easily recognizable to humans** in its native form." '535 patent at 2:28-30.

Cisco's argument also ignores the actual character of the claims. The claims recite specific processes, systems, and methods to improve computer capability. For example, the claims recite selecting "asymmetric" compression, from among a ***plurality*** of digital compressors, based on parameter of a digital data block. *See, e.g.,* '535 patent claim 15.[22] In describing the claims, Cisco omits and de-emphasizes aspects, including, e.g., the use of "plurality of compressors" recited in the claims. *See* Mot. at 14, 18-19, 21, 22-23. Cisco does not

---

[22] *See also, e.g.,* '477 patent claim 1; '442 patent claim 8; '907 patent claim 1.

argue (nor can it) that such aspects and others were conventional before Realtime's patented inventions.

The inventions overcame limitations and issues relating to "a compromise between efficient data storage, access speed, and addressable data space." '535 patent at 6:31-53. The patents describe that "the overall throughput (bandwidth) … is one factor considered by the controller 11 in deciding whether to use an asymmetrical or symmetrical compression" (*id.* At 11:25-29), and recognized that "utiliz[ing] an asymmetrical algorithm … [may] provide an increase in the overall system performance as compared the performance that would be obtained using a symmetrical algorithm" (*id.* at 12:14-20). These are technological solutions to technological problems, in contrast to human problems. The claims and the specification provide specific technological ways to improve computer functionalities (e.g., using particularized compression system/method to increase the capacity of a computer system to store more data or to transfer data more efficiently across computer systems). The inventions are not about pen-and-paper solutions limited to a "particular technological environment" (Mot. at 19, 21-24).

In sum, the asserted claims can only be read as providing technological improvements and solutions specific to digital data compression and are not abstract. At the very least, this Court must accept all the allegations of the complaint and descriptions from the intrinsic record[23] as true, and drawing all reasonable inferences in favor of Realtime, deny Cisco's motion.

**B.    Cisco Also Cannot Establish That the Claims Are Patent Ineligible Under *Alice* Step 2.**

Because Cisco cannot meet its burden under step 1 of the *Alice* framework, the inquiry ends there and step 2 need not be addressed. But even if the Court were to somehow find that the claims are directed to an abstract idea, Cisco's motion still fails because it also cannot meet its burden under *Alice* step 2.

**1.    Under any reasonable characterization, the patented claims include**

---

[23] The asserted patents are attached to, and referenced in, the FAC. Like the allegations in a complaint, facts in the asserted patents are, and should be, viewed in light most favorable to Realtime.

**additional limitations that are unconventional.**

*Alice* step 2 requires examination of the claim elements "both individually and 'as an ordered combination.'" *Alice*, 134 S. Ct. at 2355. Cisco cannot prevail on this step simply by showing that individual claim elements are "known in the art" or conventional. *Bascom*, 827 F.3d at 1349–50. Indeed, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.* at 1350; *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1351 (Fed. Cir. 2001) ("The genius of invention is often a combination of known elements which in hindsight seems preordained.").

For example, *Bascom* involved a patent for "filtering Internet content." The district court, in concluding that the claims lacked inventive concept, "looked at each limitation individually," found that that the limitations "local client computer," "remote ISP server," "Internet computer network," and "controlled access network accounts" were described as "well-known generic computer components." 827 F.3d at 1349. The Federal Circuit, however, rejected this analysis and reversed the district court. Although the individual limitations recited "generic computer, network and Internet components," the court held that the claims nonetheless reflected an inventive concept because they "recite[d] a specific, discrete implementation of the abstract idea of filtering content." *Id.* at 1350. Indeed, the court further held that while "[f]iltering content on the Internet was already a known concept, [] the patent describes how its particular arrangement of elements is a technical improvement over prior art ways of filtering such content." *Id.*[24]

As in *Bascom* and *Amdocs*, the elements of the claims here, when properly examined as

---

[24] Similarly, in *Amdocs*, the court upheld claims that recited "arguably generic components, including network devices and 'gatherers' which 'gather' information," because the "generic components operate in an unconventional manner to achieve an improvement in computer functionality." 841 F.3d at 1300–01. The court further found that the "arrangement is not so broadly described to cause preemption concerns," but "is narrowly circumscribed to the particular system outlined." *Id.* at 1302. With respect to the method claims, the court found that while the components and functionality involved (e.g., ISMs, gatherers, network devices, collection, aggregation, and enhancement) "may be generic at first blush, an examination of the claim in light of the written description reveals that many of these components and functionalities are in fact neither generic nor conventional individually or in ordered combination." *Id.* at 1306. "Instead, they describe a specific, unconventional technological solution, narrowly drawn to withstand preemption concerns, to a technological problem." *Id.*

an ordered combination, recite more than well-understood, routine, conventional activities. The inventive concept is readily apparent from the patent specifications, which describe the problems in the prior art and explain how the claimed inventions solve these problems.

The Fallon patents address the prior-art problems, including: "compromise between efficient data storage, access speed, and addressable data space," "limitations in the size of the data required to both represent and process an individual data block address," "file systems [that] are not able to randomly access compressed data in an efficient manner," "substantial disk fragmentation and slower access times." *See* '535 patent at 6:31-7:46. To solve these, the asserted patents teach unconventional combinations of elements, e.g., (a) "asymmetric compressors"; (b) "plurality of compressors"; (c) determining parameter of "data block"; (d) selecting compressor based on the parameter and/or "throughput"; (e) providing compressed data blocks; and (f) "communication channel" / determining a "throughput" of a communication channel.

As reflected in the patent claims and specifications, the claimed inventions here do not merely recite well-understood, routine, conventional activities but, instead, are necessarily rooted in computer technology and provide a technological solution that improves computer functionality and overcome a problem specifically arising in the realm of compression of digital computer data. The patents amount to "significantly more" than simply claiming an abstract idea and are therefore patent-eligible. The asserted claims present an even clearer case of patent-eligibility than claims expressly approved by the Federal Circuit. *E.g., DDR*, 773 F.3d at 1259; *Finjan*, --- F.3d ---, 2018 WL 341882, *2.

## 2. Cisco's arguments under step 2 are based on attorney arguments that not only rely on a misapplication of controlling law, but are also contradicted by the patents themselves.

In arguing that the claims lack inventive concept, Cisco pursues the same flawed analysis rejected by the Federal Circuit in *Bascom* and *Amdocs* and the Supreme Court. Cisco's arguments isolate individual claim limitations to argue that they "existed" or were purportedly "known" individually (Mot. at 16-18, 20, 22, 24). But the fact that some of the individual claim

limitations may be performed using known components does not render them ineligible. *Bascom*, 827 F.3d at 1350 ("inventive concept can be found in the non-conventional and non-generic ***arrangement of known, conventional pieces***.").[25] At best, Cisco's assertions here are based on sheer attorney argument, which is insufficient to satisfy its burden.[26] Cisco's argument is also wrong on the facts. The mere fact that the claimed elements may utilize known encoding techniques to perform data compression does not render the claims conventional. *See Bascom*, 827 F.3d at 1350.[27]

Furthermore, Cisco omits to discuss the entire claim limitations as an ordered combination. This is fatal to its motion. For example, Cisco does not argue (nor can it) that having the precise combination of the claimed elements, such as, e.g., "select[ing] … among the ***plurality*** of different asymmetric data compression encoders," selecting the algorithm "based upon … determined one or more data parameters" that are "relating to a throughput of a communication channel," and other limitations (*see, e.g.,* '477 patent claim 1[28]) was conventional.

A proper §101 analysis shows that the claims recite specific, discrete implementations of digital data compression, and the recited claim elements "operate in an unconventional manner to achieve an improvement in computer functionality." *Amdocs*, 841 F.3d at 1300–01. Indeed, the Court "must take the specification's statements about the purported invention to be true," and is "not free to accept [defendant's] contrary attorney argument" that the claims are directed to conventional means. At the very least, this is a factual question that requires denying Cisco's motion.[29]

---

[25] *See also Core Wireless*, --- F.3d ---, 2018 WL 542672, *3 ("That the invention ran on a general-purpose computer did not doom the claims").

[26] *See, e.g., Estee Lauder v. L'Oreal*, 129 F.3d 588, 595 (Fed. Cir. 1997) ("Arguments of counsel cannot take the place of evidence lacking in the record.").

[27] *See McRO*, 837 F.3d at 1316; *DDR*, 773 F.3d at 1249–50; *Amdocs*, 841 F.3d at 1299–1304.

[28] *See also, e.g.,* '535 patent claim 15; '442 patent claim 8; '907 patent claim 1.

[29] Cisco's "human can [perform the claim]" argument (Mot. at 17) also raises a factual issue and is faulty in any event, as discussed above. *See supra* at III.A.3.b.

### C.      Cisco Fails To Analyze Every Single Claim Separately.

Cisco's motion should be denied also because it provides no clear and convincing evidence that *all* of the asserted claims of the asserted patents (totaling 75 claims) are ineligible. Cisco merely provide conclusory attorney arguments asserting that some claims "provide only slight variations" on the claims that it had mentioned (*see* Mot. at 16, 19, 21, 23). Cisco's argument here amounts to repeating some of the claim elements and asserting, without any explanation or support, that they "do not add any patentable subject matter" (*id.*). Cisco's argument fails for the same reason as set forth above, e.g., Cisco ignores the actual combination of limitations set forth in the claims. *McRO*, 837 F.3d at 1313; *Bascom*, 827 F.3d at 1350 ("The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art."). Cisco cannot show that all 75 patent claims are ineligible under §101 under any standard, let alone the heightened standards on a motion to dismiss.[30]

Moreover, none of the claim elements of the asserted patents have ever been construed by any court. For example, any reasonable interpretation of the claim language would demonstrate that the claims are limited to digital data compression and cannot be performed with pen and paper or in human mind.[31] Accordingly, claim construction would further illuminate the eligibility of the patents.

Further, "patent eligibility under §101 presents an issue of law … contain[ing] underlying factual issues." *Accenture Global Servs.*, 728 F.3d at 1340-41. In order to rule for Cisco, the Court will have to first resolve several disputed issues of material fact, including: (a) the core

---

[30] Cisco's argument that Realtime's allegations in the complaint supports their improper shortcut (*see* Mot. at 5) fails, as Realtime was not required to provide allegations as to all of the claims in the complaint. *See, e.g., Orion Energy Sys. Inc. v. Energy Bank Inc.*, 2017 WL 4773301, *2 (E.D. Wis. Oct. 23, 2017) ("[A] party need not plead facts supporting infringement allegations for each asserted claim … Requiring plaintiffs to allege infringement of all asserted claims would be contrary to the spirit of Rules 1 and 8 of the Federal Rules of Civil Procedure."). Cisco cannot satisfy its burden to show §101 ineligiblity by pointing to the complaint. Indeed, facts are viewed in the light most favorable to Realtime.

[31] For example, as explained above (*see supra* at fn.14), a proper construction of the terms "compress" and "data block" would both confirm that the claims are limited to digital data compression. *See also* Dkt. No. 40.

aspects of the patented inventions; (b) whether the claimed inventions can be performed with pencil and paper; (c) whether the claimed inventions are merely generic or standard implementations of abstract ideas; and (d) whether all combinations of claim limitations are well understood, routine, or conventional. *See supra*. There will likely be subsidiary issues of fact relevant to each issue as well. Viewing these and other facts in a light most favorable to Realtime precludes a dismissal at this stage.  *Bell Atl. Corp.,* 550 U.S. at 555.

## IV.   CISCO'S ARGUMENT REGARDING THE '462 AND '298 PATENTS IS MERITLESS

Cisco does not dispute that the '462 and '298 patents are eligible under §101. Rather, Cisco's argument as to these two asserted patents is based on the pleading standard, as set forth, e.g., in *Twombly*. Cisco's argument fails, as explained below.

Under the Supreme Court's standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the task of the court "at the Rule 12(b)(6) stage is simply to assess whether the 'short and plain statement' of the plaintiff's claims in the complaint plausibly 'states a claim upon which relief can be granted.'" *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2016 WL 1643315, at *3 (E.D. Tex. Apr. 26, 2016) (J. Bryson). The test at this initial stage is not one of ultimate success or even probably success on the merits. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("The plausibility standard is not akin to a 'probability requirement'"). Instead, it is a threshold test that asks whether, taking all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff, the claim is plausible, i.e., whether the claim to a right to relief raises "above the speculative level." *Shakeri v. ADT Sec. Servs., Inc.,* 816 F.3d 283, 290 (5th Cir. 2016). When reviewing a motion to dismiss, the "issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *WiAV Networks, LLC v. 3com Corp.*, No. CIV.A. 5:09-CV-101DF, 2009 WL 6048922, at *1 (E.D. Tex. Dec. 15, 2009).

"In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and rarely granted." *Lodsys, LLC v. Brother Int'l Corp.,* No. 2:11-CV-90-JRG, 2012 WL 760729,

at *1 (E.D. Tex. Mar. 8, 2012); *see also Actus, LLC v. Bank of Am. Corp.*, No. CIV.A. 2-09-CV-102-T, 2010 WL 547183, at *2 (E.D. Tex. Feb. 10, 2010).

"In the patent context, a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *Cellular Commc'ns Equip. LLC v. HTC Corp.*, No. 6:13-CV-507, 2016 WL 4204136, at *2 (E.D. Tex. Aug. 9, 2016). "[A] plaintiff in a patent infringement suit is not required to specifically include each element of the claims of the asserted patent." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007). Moreover, the plaintiff "need not identify the specific claims or deliver detailed infringement contentions" in the complaint. *Innovative Automation LLC v. Vudu, Inc.*, No. 2:13-CV-1109-JRG, 2014 WL 4090528, at *2 (E.D. Tex. Aug. 19, 2014).

### A. Realtime's Allegations Regarding '462 Patent Easily Exceeds the *Twombly* Standard for Pleading Infringement.

#### 1. Realtime's element-by-element factual allegations show far more than the required "plausible" infringement.

One glance at Realtime's First Amended Complaint ("FAC") shows that the infringement allegations far exceed the pleading standard. Dkt. No. 17 (FAC) at ¶¶ 91-121. As an initial matter, the allegations just for the '462 patent span 31 paragraphs over 15 pages. In those 15 pages, Realtime's allegations identify specific exemplary Cisco products and state that they utilize an industry standard called H.265 (aka HEVC). *E.g.*, Dkt. No. 17 at ¶¶ 93-102. Moreover, though Realtime was not required to provide evidence, the FAC provides exemplary evidence regarding specific Cisco products. *Id.*

The FAC also provides element-by-element infringement analysis, using claim 1 of the '462 patent as an example. *Id.* at ¶¶ 103-113. Claim 1 recites (i) "reducing temporal redundancy…," (ii) "performing quantization…," (iii) "wherein the prediction error signal includes …," and (iv) performing the recited "calculating," "setting," and "selecting" steps. '462 patent claim 1. The FAC goes through each of these limitations, alleging that Cisco's products meet these limitations and why they do so. Dkt. No. 17 at ¶¶ 103-113. For example, FAC ¶ 104

explains Cisco's infringement of the limitation "reducing temporal redundancy…"; ¶ 105 explains Cisco's infringement of the limitation "performing quantization…"; ¶ 106 explains Cisco's infringement of the limitation "wherein the prediction error signal includes …"; and ¶¶ 107-108 explains Cisco's infringement of the "calculating," "setting," and "selecting" steps.

The FAC specifically alleges links between the HEVC Standard and each claim limitations. *Id.* For instance, the FAC provides an explanation of why the claim limitation is met, along with citations to specific pin-cites and quotes from documents, including specific portions of the HEVC Standard and other relevant documents. *E.g., id.* at ¶ 104 ("clause 8.5.3 Decoding process for prediction units in inter prediction mode and the subclauses thereof of the HEVC Spec describe the block based motion compensation techniques"); *see also, e.g., id.* at ¶¶ 105-108. Even more, the FAC provides additional allegations using the "reference software," which further illustrate Cisco's infringement of the '462 patent. *Id.* at ¶¶ 109-113.

The allegations regarding the '462 patent in the FAC goes far beyond the pleading requirement under *Twombly* and puts Cisco specifically on notice as to its infringement.[32]

### 2.    Cisco's arguments misapply the law and facts.

Cisco does not dispute that its products comply with the HEVC Standard. Nevertheless, Cisco argues that Realtime's allegations in the FAC linking specific portions of the HEVC Standard to the claim limitations are insufficient. Cisco is wrong. Cisco's argument demanding Realtime to "prove" infringement and to prove that Cisco "necessarily infringes" (Mot. at 24-26) seeks to impose a standard that would not even be applicable at a summary judgment stage, much less at the pleading stage. In a Rule 12(b)(6) motion, well pleaded facts are taken as true and viewed in light most favorable to Realtime.

---

[32] Realtime also provided detailed infringement contentions to Cisco on January 19, 2018, as ordered by the Court's scheduling order. *See* Dkt. No. 34; *Pers. Audio, LLC v. Google, Inc.,* No. 1:15-CV-350, 2017 WL 4837853, at *4 (E.D. Tex. May 15, 2017) (denying motion to dismiss; "The court refuses to require the detail that [defendant] demands, especially in light of this district's Local Patent Rules, which require that a Plaintiff serve infringement contentions that must detail the accused devices and put [defendant] on sufficient notice shortly after pleadings. Several courts in this district have acknowledged a relationship between the plausibility analysis and early service of infringement contentions.").

Cisco argues that HEVC Standard may not be relied upon because the '462 patent is about "steps to be performed by an encoder" (Mot. at 25) while the HEVC Standard purportedly "describes only the required operation of the decoder" (Mot. at 26). As an initial matter, Cisco's argument at best merely raises a factual issue, which is inappropriate to be decided on a Rule 12(b) motion. But even the couple of pages of the HEVC Standard Cisco attached to its motion (among multiple hundreds of pages that comprise the HEVC Standard) show that the HEVC Standard **does** provide details regarding HEVC **encoders**—e.g., the HEVC Standard uses terms such as "encoding," "coding," "compressing," and other similar terms to describe the encoding process. *E.g.,* Dkt. No. 39-2 (Cisco's Ex. B) at 2 ("[HEVC] **Encoding** algorithms … may select between inter and intra **coding** for block-shaped regions of each picture. Inter **coding** uses …"); *id.* at 3 ("motion vectors or intra prediction modes may also be further **compressed** using a variety of prediction mechanisms … **encoded** using arithmetic **coding**.").

Even assuming Cisco's assertion (i.e., that HEVC Standard is solely about decoding) is accurate (contrary to fact), that does not mean that the HEVC Standard is irrelevant to the encoding process. For example, if HEVC Standard states that "block based motion compensation technique" is used in **decoding**, then a reasonable inference (which must be made in favor of Realtime in a Rule 12 motion) is that "block based motion compensation technique" is used for **encoding**. The '462 patent claim 1 recites "block based motion compensated" technique, and allegations pointing to specific portions of the HEVC Standard regarding such a technique is logical and reasonable. *See* Dkt. No. 17 at ¶ 104. Indeed, facts are viewed in light most favorable to Realtime. Cisco's argument that the HEVC Standard is "only" about decoding is factually incorrect and legally flawed in a Rule 12(b)(6) motion.

Cisco further argues that its motion to dismiss should be granted purportedly because "the alleged functionality in the HEVC specification Realtime cites is not required of the encoder" (Mot. at 26). Cisco again misapplies the legal standard. The FAC alleges that Cisco performs each limitations of the exemplary claim 1, and provided explanations why. Dkt. No. 17 at ¶¶ 103-113. Pleaded facts are taken as true and viewed in light most favorable to Realtime—

i.e., that Cisco does perform the elements as Realtime alleged in the complaint, regardless of whether the relevant portion of the HEVC Standard alleged in the FAC is "not required," "optional," or otherwise.[33]

The sole case about a Rule 12(b)(6) motion cited by Cisco—*Stragent, LLC v. BMW of N. Am., LLC*, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017)—does not support its motion.[34] The complaint at issue in *Stragent* was a bare-bones complaint with conclusory allegations spanning only a few pages, with 1 or 2 pages for infringement allegations for each of the two patents asserted by Stragent. *See* Ex. 4 (Stragent Complaint). Indeed, Stragent's complaint "does not compare even a single limitation of any of the asserted claims to any vehicle, vehicle component or any portion of the AUTOSAR Standard." *Stragent*, 2017 WL 2821697, *10, fn.2; *id.* at *3 (Complaint "simply identify a technical standard **without further explanation**"); *id.* at *5 ("Complaint identifies no common element between the AUTOSAR Standard and the asserted claims").

In sharp contrast to Stragent's complaint (Ex. 4), Realtime's FAC provides ample explanation and provides element-by-element analysis of exemplary claim 1 to Cisco's products and the HEVC Standard. *See supra*; Dkt. No. 17 (FAC). The *Stragent* court also stated that

---

[33] Contrary to Cisco's apparent position that a patent must be "standard-essential" before an industry standard can be used for infringement (Mot. at 24-25), that is neither the law nor sensible. In fact, *Fujitsu Ltd. v. Netgear, Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010) cited by Cisco expressly held that an industry standard can properly be relied upon for infringement. *Id.* at 1327 ("We hold that a district court may rely on an industry standard in analyzing infringement."). Indeed, the Federal Circuit has approved of using standards compliance **without** requiring proof of "essentiality." *See, e.g., Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1366 (Fed. Cir. 2012) (Holding that there is a triable issue of fact where the accused products "comply with the DVD standards," even though the products can be used in non-infringing manner). Cisco's position also makes no sense, as an industry standard may show that many, though not all, limitations of a patent claim are met. In such an instance, a patent claim may not be "standards essential," but the industry standard is still certainly highly relevant evidence for infringement.

[34] The *Fujitsu* case also cited by Cisco was about a motion for summary judgment, and the *Fujitsu* court merely stated that a patentee must prove that the asserted patent is standards essential only in situation where the patentee is using **solely** standard compliance to prove infringement at trial. *Fujitsu Ltd. v. Netgear, Inc.*, 620 F.3d 1321, 1328 (Fed. Cir. 2010) ("Only in the situation where a patent covers every possible implementation of a standard will it be **enough to prove infringement** by showing standard compliance.").

"Plaintiff may satisfy its pleading obligations … by linking the [industry] Standard to the asserted claims." *Id.* at *10, fn.6. That is precisely what Realtime has done in the FAC. Accordingly, *Stragent* actually supports Realtime and compels denial of Cisco's motion.[35]

**B.    Realtime's Allegations Regarding '298 Patent Also Easily Exceeds the *Twombly* Standard for Pleading Infringement.**

The allegations regarding the '298 patent span 26 paragraphs over 12 pages. Dkt. No. 17 at ¶¶ 122-147. Like for the '462 patent, Realtime's allegations here identify specific exemplary Cisco products, allege that they utilize HEVC Standard, and provide exemplary evidence regarding specific Cisco products. *Id.*

The FAC also provides element-by-element infringement analysis, using claim 1 of the '298 patent as an example. *Id.* at ¶¶ 134-139. Claim 1 recites (i) "receiving the video stream which comprises…," (ii) "generating an output video…," (iii) "receiving metadata which…," (iv) "determining the area in the composite frame…," (v) "decoding only …," and (vi) "generating…" '298 patent claim 1. The FAC goes through each of these limitations, alleging that Cisco's products meet these limitations and why they do so. For example, FAC ¶ 134 explains Cisco's infringement of "receiving the video stream which comprises…" *See also* Dkt. No. 17 at ¶ 135 re: "generating an output video…," ¶ 136 re: "receiving metadata which…," ¶ 137 re: "determining the area in the composite frame…," ¶ 138 re: "decoding only …," and ¶ 139 re: "generating…"

The FAC specifically alleges links between the HEVC Standard and each claim limitation, by providing explanations, citations, and quotation regarding specific portions of relevant documents (e.g., HEVC Standard). *E.g., id.* at ¶ 134 ("the coded bitstream when it contains stereoscopic video in one of the frame packing arrangements …," and citing to D.2.16,

---

[35] If the Court were to grant some or all of Cisco's motion despite these arguments, Realtime respectfully requests an opportunity to amend its FAC. *See, e.g.,* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *Hart v. Bayer Corp.,* 199 F.3d 239, 248 (5th Cir. 2000) ("[A] plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibility result in dismissal of the complaint with prejudice to re-filing.").

D.3.16, D.2.29, and D.3.29 of the HEVC Standard); *see also, e.g., id.* at ¶¶ 135-139. The allegations regarding the '298 patent in the FAC far exceeds the pleading requirements.[36]

Cisco concedes that the '298 patent relates to "decoding" (Mot. at 27) and also that HEVC Standard describes "the required operation of the decoder" (Mot. at 26). Despite this, Cisco argues that the FAC should be dismissed because "Realtime fails to allege that the '298 patent claims cover ***every possible*** implementation of the HEVC standard" (Mot. at 27). Like its argument regarding the '462 patent, Cisco seeks to impose a standard that would not even be applicable in a summary judgment motion, much less in a Rule 12(b)(6) motion. The FAC alleges that Cisco performs each limitations and why. Dkt. No. 17 at ¶¶ 134-139. Pleaded facts are taken as true and viewed in light most favorable to Realtime—i.e., that Cisco does perform what it purports is "optional" or "not always used."[37] Indeed, Cisco does not assert that its products do not implement "tiles," or otherwise dispute allegations about "tiles_enabled_flag." *See* Mot. at 27. But even if it did, that would merely present a factual issue inappropriate for ruling on a motion to dismiss under Rule 12(b)(6). Realtime's allegations are sufficient, even under the *Stragent* case cited by Cisco. *Stragent*, 2017 WL 2821697 at *10, fn.6 ("Plaintiff may satisfy its pleading obligations … by linking the [industry] Standard to the asserted claims.").

## V.   CISCO'S ARGUMENT REGARDING INDIRECT INFRINGEMENT IS MERITLESS.

Cisco does not dispute that post-filing indirect infringement allegations are sufficient; Cisco's arguments here are solely about adequacy of ***pre-suit*** indirect infringement. *See* Mot. at 28 ("allegations of pre-suit induced and contributory infringement are …").

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "In the Fifth

---

[36] As mentioned above, Realtime also provided infringement contentions to Cisco.

[37] Cisco's argument that Realtime "cannot rely on the HEVC specification to allege infringement" (Mot. at 27) is based on misapplication of the law, as explained above. *Supra* at fn.33.

Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and rarely granted." *Lodsys, LLC v. Brother Int'l Corp.,* No. 2:11-CV-90-JRG, 2012 WL 760729, at *1 (E.D. Tex. Mar. 8, 2012).

Cisco's attempt to carve up an indirect infringement claim by time frame (i.e., pre-suit and post-suit) is inappropriate and should be rejected. This is simply a damages issue, and Realtime should not prevented from seeking pre-suit damages if discovery reveals support for such a fact. *WiAV Networks, LLC v. 3com Corp.*, No. CIV.A. 5:09-CV-101DF, 2009 WL 6048922, at *1 (E.D. Tex. Dec. 15, 2009) (In a motion to dismiss, the "issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim."). Cisco's motion regarding indirect infringement fails.

## VI.    CONCLUSION

For the foregoing reasons, Cisco's motion should be denied.

Dated:  February 6, 2018                          Respectfully submitted,


By: /s/ C. Jay Chung
Marc A. Fenster (CA SBN 181067)
Email: mfenster@raklaw.com
Brian D. Ledahl (CA SBN 186579)
Email: bledahl@raklaw.com
Reza Mirzaie (CA SBN 246953)
Email: rmirzaie@raklaw.com
Paul Kroeger (CA SBN 229074)
Email: pkroeger@raklaw.com
C. Jay Chung (CA SBN 252794)
Email: jchung@raklaw.com
Philip X. Wang (CA SBN 262239)
Email: pwang@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: 310/826-7474
Facsimile 310/826-6991

T. John Ward, Jr.
Texas State Bar No. 00794818

E-mail: jw@wsfirm.com
Claire Abernathy Henry
Texas State Bar No. 24053063
E-mail: claire@wsfirm.com
Andrea Fair
State Bar No. 24078488
E-mail: Andrea@wsfirm.com
**Ward, Smith & Hill, PLLC**
PO Box 1231
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

**Attorneys for Plaintiff**
**REALTIME ADAPTIVE STREAMING**
**LLC**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on all counsel of record via electronic service on February 6, 2018.

/s/ C. Jay Chung