**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

REALTIME ADAPTIVE STREAMING LLC,

                      Plaintiff,

      v.

CISCO SYSTEMS, INC.,

                     Defendant.

Case No. 6:17-cv-0591-JRG
LEAD CASE

**DEFENDANT CISCO SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## I.       **INTRODUCTION**

Realtime's Opposition mischaracterizes Cisco's arguments in an attempt to distract from the issues: the claims of the Fallon patents are abstract, lack any inventive concept, and are therefore patent-ineligible under 35 U.S.C. § 101.  Notably, despite black letter law that Section 101 must focus on the language of the claims of the patent, Realtime largely avoids discussing claim language at all, arguing instead in vague generalities about compression (itself, an abstract concept that indisputably existed decades before the Fallon patents).  Even those high-level arguments are undermined by the Fallon patents themselves, which confirm that the alleged technological problems Realtime identifies (*e.g.*, storage size limitations, random access time, and disk fragmentation) are unrelated to the claims.  As the Federal Circuit held in *RecogniCorp*, claims directed at merely encoding and decoding data, without any inventive concept, are patent-ineligible.  The Fallon patents are directed at exactly this concept.  Although Realtime attempts to avoid *RecogniCorp*, it is binding Federal Circuit authority and the most comparable case to the claims of the Fallon patents, confirming their ineligibility under Section 101.

With respect to its claims of infringement of the '462 and '298 patents, Realtime's defense fares no better.  Rather than contending that it complied with the pleadings standard identified by another court in this District in *Stragent*, Realtime argues, again, in vague generalities that its claims are "plausible."  This is not enough for a standards-based infringement claim, and the Court should dismiss these causes of action.

Finally, for indirect infringement, Realtime frames this as a damages issue, but concedes it has alleged no facts to support pre-suit indirect infringement.  The Court should dismiss those claims as well.

## II.    THE FALLON PATENT *CLAIMS* ARE ABSTRACT

It is undisputed that the Fallon **claims** are directed toward data compression (*e.g.*, Opp. at 1), a type of "encoding and decoding" data, which the Federal Circuit has stated is "an abstract concept long utilized to transmit information" and is thus patent-ineligible. *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017).   Realtime argues that, notwithstanding *RecogniCorp*'s clear and unambiguous holding, its patents should survive because they are "technological solutions to technological problems." Opp. at 7.  This claim collapses under even modest scrutiny.

Realtime's analysis is flawed from the outset because it focuses almost exclusively on the Fallon patent **specifications**, largely ignoring the claims throughout its opposition.  It is well settled that the "**claim**—as opposed to something purportedly described in the specification" must satisfy the eligibility test. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338-39 (Fed. Cir. 2017).  Realtime, citing *Core Wireless Licensing v. LG Elecs., Inc.*, contends that it is proper to rely on the specification (Opp. at 13, citing *Core Wireless*, 2018 WL 542672, *4 (Fed. Cir. Jan. 25, 2018)), but, in *Core Wireless*, the Federal Circuit **first** considered the claim **alone** and held that it "recited a specific improvement" (2018 WL 542672, at *4).  The court merely noted, in *dicta*, that the specification confirmed this understanding of the **claims**.  *Id.*[1]  Realtime, in contrast to the plaintiff in *Core Wireless*, relies almost exclusively on the specification without linking that to any specific claim limitation.  *See, e.g.*, Opp. at 3 (discussing "disk fragmentation" in the specification without citing claim language).  This is improper.

---

[1] For example, the Federal Circuit **first** discussed the claim language relating to displaying "a limited set of data" and then **later** discussed the specification reference to "a limited list of common functions and commonly accessed stored data."  *Id.*

The claims confirm that Realtime's patents directly pertain to abstract ideas.  Indeed, in its Opposition, Realtime never identifies any claim reciting a new type of compression technology or computer components that was not well-understood in the prior art.  Moreover, Realtime's purported "solution" recited in the claims confirms their abstract nature.  *See, e.g.*, Opp. at 3-4, 16 (describing Fallon claims as directed at "compress[ing] data blocks based on a parameter relating to, e.g. the data blocks and/or throughput").[2]  For example, Realtime cites the specification's identification of "problems" related to known file allocation tables.  '535 patent at 6:31-34 (cited by Opp. at 10) ("limitations in the size of the data required to both represent and process an individual data block address, along with the size of individual data blocks governs the type of *file allocation tables currently in use*").  But the Fallon claims do not recite the term "file allocation table" nor do they claim a new type of file allocation table or an improvement to a file allocation tables.  Realtime is entirely silent on how file allocation tables allegedly relate to the Fallon *claims'* recitation of encoding data based on a parameter.  And, although Realtime references the use of "multiple" or "two or more" compressors (*e.g.* Opp. at 10), the claims do not require using two compressors (*e.g.* '535 claim 15) and in any event the patent admits this concept was well-known ('535 patent at 5:33-55).  Finally, to the extent that Realtime is merely arguing that compression reduces data size, the patent admits this as a commonly understood technological solution.  '535 patent at 4:20-25.

Realtime also incorrectly argues that the claims are directed at problems allegedly "unique to the realm of digital data."  Opp. at 10.  This argument misrepresents the specification, which

---

[2] Notably, despite Realtime's protestations that Cisco "mischaracterizes" the claims, this formulation is virtually identical to Cisco's description of the abstract idea: "[d]etermining a parameter of data to encode, selecting and performing encoding based on the determined parameter, and storing that data."  Motion at 15.

compares different types of digital data and says that some digital data is "symbolic digital data" that is "easily represented" with human-recognizable symbols such as a "letter" ('535 patent at 2:15-20) while other digital data is "diffuse digital data" that is "*typically* not easily recognizable to humans in its native form" ('535 patent at 2:28-30).  Realtime never alleges that its claims are limited to or solve problems with "diffuse" digital data.[3]

Realtime's cited cases are readily distinguishable.   Unlike *RecogniCorp*, none of Realtime's cases relate to encoding data.  Instead, Realtime's cases relate to behavior-based virus scanning (*Finjan, Inc. v. Blue Coat Sys., Inc.*, 2018 WL 341882, *3 (Fed. Cir. Jan. 10, 2018)), self-referential databases (*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1332 (Fed. Cir. 2016)), computer memory caches (*Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017)), and a user interface for un-launched applications (*Core Wireless*, 2018 WL 542672, at *4).  None of these technologies relate to the Fallon patents' recitation of encoding data based on a parameter.  Nor does Realtime make any analogies between the *claims* in the Fallon patents and the *claims* in its cited cases.  Realtime does not do so because it cannot.

Realtime then attempts to rely on cases from other courts in this District addressing *unrelated* Realtime Data patents, which, as Realtime concedes, involved different claims.  *See* Opp. at 22.  Realtime does not explain how those cases are relevant to the Fallon *claims* or identify the technological improvement in the Fallon patent *claims* over those unrelated patents.

Finally, Realtime's argument that Cisco mischaracterizes the claims is wrong.  As noted above, Realtime similarly characterizes its claims as directed at encoding data based on a

---

[3] Realtime does not explain why one needs to "recognize" data to be able to encode it as recited by the claims.  One can apply the rules of a particular encoder regardless of whether they recognize the data (*e.g.* one could use Morse code to transmit a message written in a foreign language even if they did not understand that language).

parameter.  As explained in *RecogniCorp*, using a "CPU" or similar generic computer hardware to perform an otherwise abstract process that could be performed by a human does not make an idea patent eligible.  *See RecogniCorp*, 855 F.3d at 1328.[4]  In the Fallon patents, the computer is recited merely as a tool for performing the abstract steps of selecting an encoder and then applying that encoder, steps which could otherwise be performed by a human (*e.g.* with Morse code, as noted by the Federal Circuit in *RecogniCorp*).

## III.      THE FALLON PATENT *CLAIMS* LACK AN INVENTIVE CONCEPT

At *Alice* step two, Realtime again improperly relies on the specification as opposed to the claims.  *Two-Way Media*, 874 F.3d at 1338-39.  Realtime's argument that the Court must accept the specification's statements as true regarding the alleged inventive concept (Opp. at 23) also misstates the law.  *Two-Way Media*, 874 F.3d at 1338-39 (specification of asserted patent described "a technological innovation" but it was not present in claims, which were thus held patent-ineligible).  The law requires the Court to evaluate whether there is any inventive concept in the ***claims***, regardless of whether any such concept is described in the specification.  *See id.*

Moreover, although Realtime alleges that the claims recite "unconventional" components or are arranged in an "unconventional" way, Realtime never explains what is allegedly unconventional about the claims, nor does Realtime identify the claim language it contends is unconventional.  Instead, Realtime cites prior art portions of the specification relating to file allocation tables that are irrelevant.  But the Court must consider "whether these improvements to computer functionality [alleged in the specification] ***are captured in the claims***."  *Berkheimer v. HP Inc.*, --- F.3d ----, 2018 WL 774096, *7 (Fed. Cir. Feb. 8, 2018) (emphasis added).  In

---

[4] Thus Realtime's attempt to distinguish *RecogniCorp* as not requiring a computer is misplaced. One claim did require a computer but was nonetheless held abstract because the computer was a mere tool for implementing the abstract idea.  *Id.*

*Berkheimer*, the patentee cited the specification's discussion of "redundancy" and a "one-to-many editing process" as allegedly describing an unconventional, inventive architecture. *Id.* at *6. The Federal Circuit held there was a factual dispute regarding four claims that explicitly recited either "without substantial redundancy" or "effect a one-to-many change." *Id.* at *7. But, for the remaining claims that lacked any such limitation, the Federal Circuit affirmed summary judgment of ineligibility. *Id.* Here, Realtime relies on the specification's discussion of file allocation tables (*see* '535 patent at 6:31-7:46 (discussed above)), but no claim of the Fallon patents relates to file allocation tables. Although Realtime alleges that "[t]o solve these, the asserted patents teach unconventional combinations of elements," it offers no citation at all for this argument, confirming that the Fallon specification—unlike the one in *Berkheimer*—raises no factual issue that warrants denying the instant motion.

Ultimately, there is nothing unconventional ***claimed*** in the Fallon patents. The claims merely recite conventional computer operations (*e.g.*, that compressors compress data) performed in a conventional order (*e.g.* one cannot select an encoder based on a parameter until after one has first determined the parameter). *See, e.g.*, *Two-Way Media*, 874 F.3d at 1339 ("The claim uses a conventional ordering of steps—first processing the data, then routing it, controlling it, and monitoring its reception—with conventional technology to achieve its desired result").

## IV.    THE COURT NEED NOT ANALYZE EACH CLAIM SEPARATELY

The law is clear that the Court is not required to evaluate each claim individually for the purposes of patent eligibility. *See* Motion at 9 n.2 (collecting cases). Realtime concedes the claims are substantially similar and can be analyzed together for this motion by accusing Cisco of infringing all claims "for similar reasons" and by addressing all claims and ***patents*** together in its opposition.

## V.     REALTIME FAILED TO PLAUSIBLY PLEAD INFRINGEMENT OF THE '462 AND '298 PATENTS

Realtime cites to numerous cases relating to pleadings standards generally and vaguely argues about the "plausibility" of its claims, but none of Realtime's cited cases relates to the standards required for pleading patent infringement based on a technical standard.  Thus, Realtime concedes that the proper test, as identified by Cisco and as previously identified by another court in this District, is that Realtime must either plead that "the patent covers *every* possible implementation of the [accused standard]" or that "the accused products, by complying with the [accused standard], also infringe the asserted claims."  *Stragent, LLC v. BMW of N. Am., LLC*, 2017 WL 2821697, *6 (E.D. Tex. Mar. 3, 2017).  *Stragent* was a pleadings case, and thus Realtime's protestations about Cisco's standard requiring "proof" and its argument that Cisco's standard "would not even be applicable in a summary judgment motion" (Opp. at 25, 29) are entirely incorrect as another court in this District has applied—at the Rule 12(b)(6) stage—the very standard Cisco is applying.[5]  Realtime's objections are nothing more than a smokescreen for its real argument: that *Stragent* is somehow bad law, even though Realtime does not offer even an ounce of support for its argument that Magistrate Judge Mitchell and Judge Schroeder[6] both got it wrong in *Stragent*.[7]  The Court should reject this argument and apply the pleading standard

---

[5] Indeed, in *Stragent*, the Court rejected this exact argument.  2017 WL 2821697, *6 ("The Court does not expect Plaintiff to present proof of any kind.  Rather, the Court expects Plaintiff to plausibly plead its claims for direct infringement. . . . To survive a motion to dismiss, the plaintiff must *allege* the elements, and to survive a motion for summary judgment, the plaintiff must *adduce evidence showing* the elements") (original emphasis); *see also id.* at *4-5 (analyzing pleadings and non-pleadings cases to determine elements required for infringement).

[6] Judge Schroeder adopted and agreed with the *Stragent* report.  *See* Dkt. 39-1.

[7] In a footnote, Realtime alleges that "the Federal Circuit has approved of using standards compliance without requiring proof of 'essentiality'" citing to *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1366 (Fed. Cir. 2012).  Opp. at 27 n.33.  Not true.  In *Toshiba*, the Court specifically acknowledged that there must be evidence of use of the relevant portion of the

properly identified in *Stragent*, under which the Court must dismiss Realtime's infringement claims.

It is indisputable that Realtime failed to plead that the patents cover ***every*** possible implementation of the HEVC standard, and thus does not satisfy the first prong of *Stragent*. *See* Opp. at 26-27 & 27 n.33 (disputing that Realtime must plead that the '462 patent is essential); Opp. at 29 (same for '298 patent).[8]

It is also clear that Realtime fails to allege that Cisco's accused products infringe the claim by complying with optional parts of the HEVC standard, and thus fails to satisfy the second prong of *Stragent*. For the '462 patent, Realtime confirms that its only allegations regarding the operation of Cisco products is that "they utilize an industry standard called H.265 (aka HEVC)." Opp. at 24 (citing FAC, ¶¶ 93-102). Then, Realtime incorrectly alleges that it "goes through each of the[] limitations, alleging that Cisco's products meet these limitations and why they do so." Opp. at 24 (citing FAC, ¶¶ 103-113). But, a review of the cited paragraphs of the First Amended Complaint confirms that those paragraphs cite ***only*** to third-party documentation purportedly relating to the HEVC standard and do not make any allegations specific to Cisco at all (indeed, they do not even include the word "Cisco"). Dkt. 17, ¶¶ 103-113. Under *Stragent*, this is not enough. Because Realtime did not allege that every implementation of the HEVC standard infringes the '462 patent,

---

standard and remanded for trial only because there was "sufficient evidence to create a triable issue of fact of whether [the infringing modes of the accused product were used]." 681 F.3d 1358. Realtime's other argument that an industry standard may be "highly relevant" if not essential also fails to justify Realtime's deficient pleading. As the *Stragent* court recognized, the proper way to use a technical standard even if not essential is to allege that *Cisco's products* actually use the relevant accused portions of the standard.

[8] Realtime may argue in sur-reply that it did not directly admit this, but that only highlights the problem with both Realtime's First Amended Complaint and its Opposition: Realtime is being deliberately vague so as to avoid making a "short and plain statement" (*see* Fed. R. Civ. P. 8(a)(1)) regarding whether or not the patents allegedly cover every possible implementation of the HEVC standard, as required by *Stragent*.

it was required to make allegations about ***Cisco's products*** (which it failed to do), not about third-party characterizations of the HEVC standard (as it actually did).  Realtime's argument that it is a "reasonable inference" that allegations against the HEVC standard support a claim of infringement against ***Cisco's products*** (Opp. at 26) is yet another entirely unsupported argument that *Stragent* is wrong.  Thus, Realtime's allegations for the '462 patent are insufficient and the Court should dismiss this infringement claim.

For the '298 patent, Realtime's pleadings are similarly deficient.  Realtime first alleges that Cisco's products use the HEVC standard.  Opp. at 28 (citing FAC, ¶¶ 122-147).  Realtime then incorrectly alleges that it "goes through each of the[] limitations, alleging that Cisco's products meet these limitations and why they do so."  Opp. at 28 (citing FAC, ¶¶ 134-139).  But again, a review of those paragraphs confirms that they cite ***only*** to third-party documentation about the HEVC standard and do not make any allegations specific to Cisco at all (nor do they mention the word "Cisco").  Dkt. 17, ¶¶ 134-139.  For the '298 patent only, Realtime makes an argument that its allegations are sufficient by quoting to a footnote in *Stragent* discussing "linking the [industry] Standard to the asserted claims."  Opp. at 29 (quoting 2017 WL 2821697 at *10 n.6).  This quote does not support Realtime's allegations.  Linking the standard to the claims is only *part* of what is required by *Stragent*; Realtime must also either link Cisco's products to the standard generally (if it alleges the patent covers all implementations of the standard) or link Cisco's products to the specific portions of the standard accused of infringement.  2017 WL 2821697, at *6.  Realtime has failed to do either, and thus its allegations are deficient under *Stragent* and should be dismissed.

Finally, Realtime's reference to infringement contentions cannot save its claims.  Although Realtime has served infringement contentions, it does not even allege that the infringement contentions remedy the deficiency identified in Cisco's motion (and they do not).  Forcing the

9

parties to re-argue a second, virtually identical motion regarding the sufficiency of Realtime's

infringement contentions would be a waste of both party and Court resources.  The argument is

fully briefed here and the Court can and should decide it now, as the *Stragent* court did.

## VI.      THE COURT SHOULD DISMISS PRE-SUIT INDIRECT INFRINGEMENT

Realtime does not dispute that it alleged no facts relevant to pre-suit indirect infringement.

Instead, Realtime cites inapposite cases that do not discuss indirect infringement at all.  Realtime's

argument that this is "simply a damages issue" does not relieve it of its obligation to allege facts

to support pre-suit indirect infringement in the complaint.  Realtime has failed to do so, and the

Court should dismiss those claims.

## VII.     CONCLUSION

For the reasons discussed above and in Cisco's motion, the Court should find the Fallon

patents ineligible under Section 101, dismiss Plaintiff's claims for infringement of the '462 and

'298 patents, and dismiss Plaintiff's claims for pre-suit indirect infringement claims.

Dated: February 13, 2018       By:    */s/ Katherine Vidal*

Katherine Vidal (CA Bar No. 194971)
kvidal@winston.com
Matthew R. McCullough (CA Bar No. 301330)
mrmccullough@winston.com
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA 94025
Telephone: (650) 858-6500
Facsimile:   (650) 858-6550

Nimalka Wickramasekera (CA Bar No. 268518)
nwickramasekera@winston.com
Andrew B. Grossman (CA Bar No. 211546)
agrossman@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Michael A. Bittner (Texas Bar No. 24064905)
mbittner@winston.com
WINSTON & STRAWN LLP
2501 N. Harwood St., 17th Floor
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 13, 2018, a true and correct copy of the above and foregoing document has been served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Katherine Vidal*
Katherine Vidal